Sharon D. Cousineau
SAMWEL COUSINEAU, PC
700 West Evergreen Blvd.
Vancouver, WA 98660
Tel. 360-750-3789
Fax 360-750-3788
sdcousineau@gmail.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | | |
|---|---|---|
| DREW HARRIS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    6:19-cv-1464 |
| | ) | |
| MATCO TOOLS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' COMPLAINT

Plaintiff, DREW HARRIS ("Plaintiff"), by and through his attorney, Sharon D. Cousineau,

alleges the following against Defendant, MATCO TOOLS CORPORATION ("Defendant"):

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47

   U.S.C. § 227, et seq. ("TCPA").

2. Count II of Plaintiff's Complaint is based on the Oregon Unlawful Debt Collection

   Practices Act, ORS 646.639 ("UDCPA").

### JURISDICTION AND VENUE

3. This court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367.

4. This court has federal question jurisdiction because this case arises out of violations of

1

federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

5.  This court has supplemental jurisdiction over the state claim alleged herein pursuant to 28 U.S.C. § 1367 it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

6.  Venue and personal jurisdiction in this district are proper because Defendant does or transacts business within this district, and a material portion of the events at issue occurred in this district.

**PARTIES**

7.  Plaintiff is a natural person residing in the City of Bend, Deschutes County, State of Oregon.

8.  Plaintiff is a consumer as that term is defined by ORS 646.639(1)(b).

9.  Plaintiff allegedly owes a debt as that term is defined by ORS 646.639(1)(f).

10. Defendant is a debt collector as that term is defined by ORS 646.639(1)(h).

11. Plaintiff is, and at all times mentioned herein, a person as that term is defined by 47 U.S.C. § 153(39).

12. Defendant is, and at all times mentioned herein, a person, as that term is defined by 47 U.S.C. § 153(39).

13. Defendant is a Delaware-incorporated business corporation headquartered in the City of Stow, Summit County, State of Ohio.

14. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

15. During the course of its attempts to collect debts allegedly owed to it, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or

2

electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

16. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

17. Defendant is attempting to collect a consumer debt from Plaintiff, allegedly owed by Plaintiff.

18. The alleged debt at issue arises from transactions for personal, family, and household purposes.

19. In or around December 2018, Defendant began placing collection calls to Plaintiff on his cellular telephone at 503-957-5091 in an attempt to collect the alleged debt.

20. Defendant calls Plaintiff from several telephone numbers, including 800-472-0012 and 888-362-8597, which are two of Defendant's telephone numbers.

21. In or around March 2019, Plaintiff answered one of Defendant's collection calls and told Defendant to stop calling him.

22. Despite being told by Plaintiff to stop calling him, Defendant continued to place collection calls to Plaintiff unabated.

23. On or about July 23, 2019, Plaintiff answered another of Defendant's collection calls and again told Defendant to stop calling him.

24. Despite being told by Plaintiff to stop calling him, Defendant continued to place collection calls to Plaintiff unabated.

25. The natural consequences of Defendant's actions were to unjustly condemn and vilify Plaintiff for his non-payment of the alleged debt.

3

26. The natural consequences of Defendant's statements and actions were to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

27. The natural consequences of Defendant's actions were to cause Plaintiff mental distress

28. None of the calls Defendant made to Plaintiffs were for an emergency purpose.

29. All of the calls Defendant made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

30. During at least two conversations, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephone.

31. Plaintiff have never given to Defendant prior express consent to contact Plaintiff as described herein.

32. Even if at one point Defendant had prior express consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above.

33. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

34. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

35. When Plaintiff answered Defendant's calls, he was sometimes greeted with "dead air" whereby no person was on the other end of the line.  After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt.

36. When Plaintiff answered Defendant's calls, he was sometimes greeted with a message spoken by a pre-recorded or artificial voice.

37. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the

capacity to store telephone numbers.

38. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

39. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

40. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

41. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

42. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

43. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients.

44. The dead air that the Plaintiff may have experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a

live human being, there would be no such dead air as the person dialing Plaintiff's telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

45. Plaintiff also received "abandoned calls" from the Defendant.

46. Abandoned calls occur when Defendant's automated system calls more customers than it has agents available, and as a result a customer who answers hears nothing but dead air until the call is terminated because the automated system is unable to transfer the call it dialed to a human being.

47. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent and/or after revocation of such consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;
   b. Electronically intruding upon Plaintiff's seclusion;
   c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
   d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
   e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I:
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

48. Plaintiff fully incorporates and re-alleges paragraphs 1 through 47 as if fully set forth herein under Count I of Plaintiff's Complaint.

49. Defendant's conduct violated the TCPA by:

   a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in

6

violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, DREW HARRIS, respectfully requests judgment be entered against Defendant, MATCO TOOLS CORPORATION for the following:

50. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

52. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

53. Any other relief that this Honorable Court deems appropriate.

## COUNT II
## DEFENDANT VIOLATED THE OREGON UNLAWFUL DEBT COLLECTION PRACTICES ACT

54. Plaintiff fully incorporates and re-alleges paragraphs 1 through 47 as if fully set forth herein under Count II of Plaintiff's Complaint.

55. Defendant violated the UDCPA based on the following:

a. Defendant violated 646.639(2)(3) of the UDCPA by communicating with a debtor or any member of the debtor's family repeatedly or continuously or at times known to be inconvenient to the debtor or any member of the debtor's family and with intent to harass or annoy the debtor or any member of the debtor's family when Defendant bombarded Plaintiff with robocalls and even continued to do so after being told by Plaintiff to stop calling him on at least two separate occasions.

7

WHEREFORE, Plaintiff, DREW HARRIS, respectfully requests judgment be entered against Defendant, MATCO TOOLS CORPORATION, for the following:

56. Statutory damages of $200 pursuant to the Oregon Unlawful Debt Collection Practices Act, 646.638(1);

57. Costs and reasonable attorneys' fees pursuant to the Oregon Unlawful Debt Collection Practices Act, 646.638(3); and

58. Any other relief that this Honorable Court deems appropriate.

DATED:  September 11, 2019

Respectfully submitted,

By: /s/Sharon D. Cousineau
Sharon D. Cousineau
SAMWEL COUSINEAU, PC
700 West Evergreen Blvd.
Vancouver, WA 98660
Tel. 360-750-3789
Fax 360-750-3788
sdcousineau@gmail.com

8